UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MEGAN MUTER | No. 19 CR 4<br><br>Judge Robert W. Gettleman |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, through JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits this sentencing memorandum regarding defendant Megan Muter. For the reasons stated below, a sentence of 27 months' imprisonment is appropriate in light of the 18 U.S.C. § 3553(a) factors.

**Introduction**

Over the course of almost seven years, defendant Megan Muter abused her position as a Treasurer, and later President-Elect, of a nonprofit organization for her own financial benefit. Defendant stole approximately $255,432 from the nonprofit organization and used the money to afford herself more lavish lifestyle. She purchased clothing, funded vacations, and paid for entertainment and personal expenses, including spa appointments and season tickets to the Chicago Bulls, all at the expense of the nonprofit organization she had a duty to serve. Reliant on the funds from the organization to maintain her lifestyle, defendant took steps to conceal her actions, preventing others in the nonprofit organization from accessing the organization's bank accounts and falsifying account balances to the national chapter

1

of the organization. Defendant undertook this crime while fully aware of the impact such a financial loss could have on the nonprofit organization, her colleagues within the organization, and the reputation of the organization as a while. She acted while aware of the potential impact a term of imprisonment could have on her young child.

While the government acknowledges that there are numerous mitigating factors in this case, they are insufficient to depart from the Guidelines. A Guideline sentence of 27 months' imprisonment is an appropriate sentence that accomplishes the goals of criminal sentencing.

## Background

### I. Defendants' Criminal Conduct

The government incorporates by reference the government's version of the offense. In order to reduce the length of this filing, the government will not repeat the factual background here.

### II. The Probation Officer's Guideline Calculations are Accurate

The government agrees with the criminal history and offense level calculations set forth in the Presentence Investigation Report prepared by the U.S. Probation Office. PSR ¶¶ 14-32. Defendant's total offense level is 18 and her criminal history category is I. The resulting advisory Guidelines range is 27 to 33 months' imprisonment.

### III. A Sentence of 27 Months' Imprisonment is Appropriate Under the Factors Set Forth in 18 U.S.C. § 3553(a).

A low-end guideline sentence of 27 months' imprisonment is warranted after considering the factors outlined in 18 U.S.C. § 3553(a), including the nature and

circumstances of the offense and the history and characteristics of defendant. This sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, afford adequate deterrence to criminal conduct, and avoid unwarranted sentencing disparities.

Defendant obtained an advanced education that afforded her the means to provide a nice life for herself. PSR ¶¶ 55-57. She used her education and work experience to obtain a position serving on the board of a nonprofit organization within her industry. Despite her ability to afford a nice life and in spite of her promise to serve the nonprofit organization, within months of her appointment as Treasurer, defendant began stealing from the organization. PSR ¶ 6. Defendant used the funds not to pay for essentials or to make ends meet, but to afford herself the lifestyle she envisioned, replete with vacations, spa appointments, gym memberships, and even season tickets to the Chicago Bulls. *See* PSR ¶ 10.

Defendant's actions deprived the organization and its members of over $250,000. But the financial loss was not the only harm. The organization was unable to pay certain speakers and keep previously scheduled engagements designed to serve the members of the organization. PSR ¶ 10. This resulted in a hit to the reputation of the organization itself, which undoubtedly caused the loss of members, the loss of future donations, and ultimately the weakening of the organization long-term. PSR ¶ 10. In addition, defendant failed to file taxes for years and provided false information that the national chapter used in prior tax filings. PSR ¶ 10. To correct

the errors, members of the organization volunteered personal time to recreate financial records to file delinquent taxes and financial reports. PSR ¶ 10.

In mitigation, the government acknowledges defendant's immediate and unequivocal acceptance of responsibility. The government notes that defendant pled guilty to the information the day of her arraignment. PSR ¶ 3. The defendant also sought treatment for the motivations underlying her crime and volunteered her time to her local church to give back to her community. PSR ¶¶ 47-48. Perhaps the greatest mitigating factor is that defendant is a single mother to a young child and the child's sole source of financial support. PSR ¶ 37. Undoubtedly, defendant's son will suffer the collateral consequences of defendant's actions, not unlike the family members in virtually every other case. Thankfully, defendant enjoys the support of her family, who can care for defendant's child thereby minimizing the effects of a period of incarceration. *See* PSR ¶¶ 47-48.

Finally, a sentence of imprisonment is important to promote general deterrence. The Seventh Circuit has held that white-collar criminals are "prime candidates for general deterrence" because they "act rationally, calculating and comparing the risks and the rewards before deciding whether to engage in criminal activity." *United States v. Brown*, 880 F. 3d 399, 405 (7th Cir. 2018) (internal citations omitted). Defendant's sentence would serve to deter others similarly inclined who might otherwise believe that they could evade law enforcement, or avoid a custodial sentence.

For all of these reasons, the 3553(a) factors weigh in favor of a sentence of 27 months' imprisonment in order to provide just punishment, to protect the community, and to promote respect for the law.

### IV. Recommended Conditions of Supervised Release

Pursuant to Title 18, United States Code, Section 3583(b)(2), the Court may impose a term of supervised release of not more than three years. The applicable mandatory conditions of supervised release under 18 U.S.C. § 3583(d) are set forth on page 15 of the PSR. The government has no objection to the recommended discretionary and special conditions as applied to a term of Supervised Release set forth on pages 15 through 20 of the PSR, and concurs with the probation officer's rationale for these conditions. Specifically, the government agrees that discretionary conditions (1), (4), (5), (6), (7), (8), and (9) and special conditions (4), (5), (6), (7), and (8) promote the statutory factors of affording adequate deterrence to criminal conduct, protecting the public from further crimes by the defendant, and assisting the defendant in reintegrating into society upon his release.

The government further agrees that discretionary conditions (14), (15), (16), (17), and (18) promote the statutory factor of allowing for effective monitoring of defendant during any supervised release term imposed.

### V. Restitution, Fine, and Forfeiture

The government notes that defendant has negative equity and appears to be unable to pay a fine. PSR ¶ 65.

## VI. Conclusion

For the reasons set forth above, the government respectfully requests that this Court impose a sentence of 27 months' imprisonment and three years of supervised release with the conditions set forth above.

                Respectfully submitted,

                JOHN R. LAUSCH, JR.
                United States Attorney

By:   /s/ *Kristen Totten*
       KRISTEN TOTTEN
       Assistant U.S. Attorney
       219 South Dearborn St., Rm. 500
       Chicago, Illinois 60604
       (312) 469-5340

Dated: June 13, 2019